Filed 6/11/25  P. v. Mendoza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REBECCA LEE MENDOZA,<br><br>    Defendant and Appellant. | C101991<br><br>(Super. Ct. Nos. STK-CR-FE-2011-0005400, SF117105A) |

Defendant Rebecca Lee Mendoza appeals from the denial of her postconviction petition for relief pursuant to Penal Code section 1172.6.[1]  Counsel for Mendoza filed a brief seeking our independent review under *People v. Delgadillo* (2022) 14 Cal.5th 216 to determine whether there are any arguable issues on appeal.  Mendoza filed a supplemental brief in propria persona arguing the trial court erred by relying on its "memory of the case" and asserts the People's use of the appellate court's factual

---

[1]     Further undesignated statutory references are to the Penal Code.

1

summary was improper at the prima facie stage. She also asserts error at her original trial based on her trial counsel's failure to present evidence of battered women's syndrome. Rejecting Mendoza's claims of error, we will affirm.

BACKGROUND

Mendoza was charged with, among other offenses, first degree murder (§ 187) and personal and intentional discharge of a firearm causing great bodily injury or death (§ 12022.53, subd. (d)).[2]

The facts of the case are set forth in the appellate opinion from Mendoza's prior appeal. (See *People v. Mendoza* (Dec. 3, 2018, C078817) [nonpub. opn.].)[3] Briefly summarized, Mendoza shot her husband with a handgun in March 2011, and he died as a result in August 2011.

The two started dating in 2000 and had an on-again, off-again relationship for years and they married in 2011. In the weeks prior to the fatal shooting, Mendoza exhibited anger at her husband for staying out all night and based upon her suspicion he was cheating on her. During a February 2011 altercation, she drove her car into her husband's truck twice. After the second collision, she told her husband, " '[G]ive me some money, fucker, so I can buy a gun and shoot your punk ass . . . .' " (*People v. Mendoza, supra*, C078817.)

That same month, Mendoza purchased a gun and told others she would shoot her husband if he ever hurt her or pissed her off.

---

**2**    The information also charged Mendoza with two counts of vandalism (§ 594, subd. (a)), a prior assault with a deadly weapon (a car) (§ 245, subd. (a)(1)), and exhibiting a firearm (§ 417, subd. (a)(2)).

**3**    Our recitation of the facts from our prior appellate opinion is solely for the purpose of efficiently summarizing the background of this case. We do not rely on these facts in resolving the issue raised in this appeal. (§ 1172.6, subd. (d).)

After midnight on the day of the shooting, Mendoza texted her husband several times as to his whereabouts and demanded he call her back. The texts demonstrated her increasing anger throughout the night and into the morning. About 4:00 p.m. that day, her husband went to Mendoza's home and the two got into an argument. One neighbor saw Mendoza shoot at her husband as he ran toward his truck. A second neighbor heard gunshots, someone cheering, " 'Woo hoo!' " and saw Mendoza fall to her hands and knees and say, " 'Oh my God, Oh my God. I shot him.' [¶] . . . [Her husband] sustained a gunshot wound to the neck that hit the spinal canal, leaving him a quadriplegic. He could not drink, eat, breathe or talk on his own. He died on August 7, 2011, from complications from the gunshot wound to the neck, i.e., hemorrhagic pneumonia resulting in sepsis." (*People v. Mendoza, supra*, C078817.)

At the scene, Mendoza told the fire captain she shot her husband because he choked her. Mendoza had no visible injuries and her claims of shortness of breath were belied by the fact that her breathing was not labored.

In her postarrest statement to the police, Mendoza told officers that after an argument, her husband held her face down onto a mattress and she could not breathe. When he tried to leave, she grabbed a gun from the mattress to scare him because she was mad. She followed him and fired the gun in the hallway but missed. She fired again from the porch as he ran to the driver's door of his truck and then again as he crouched by the truck.

Mendoza testified at trial that over the course of their relationship, her husband slapped, hit, punched, and pushed her. She asserted he verbally and emotionally abused her. She also said he told her stories that scared her; for example, he knew how to dispose of dead bodies by feeding them to pigs. She bought the gun because her husband feared home invasions and because of separate threats to her by her husband.

Mendoza testified she shot her husband because he tried to kill her. She admitted she was angry with him because he was with another woman the night before. She

repeated her prior statement to the police that her husband held her down on the bed and tried to suffocate her, adding that she passed out. When she regained consciousness, her husband was gone, so she grabbed her gun and went after him. She saw him in the front room and shot at him because she thought he was going to his truck to get a gun to kill her. She also shot at him when he was outside to keep him away from the truck.

The trial court did not instruct the jury on the natural and probable consequences doctrine or on the felony-murder rule. Rather, the court instructed the jury on murder using CALCRIM No. 520. To convict Mendoza of murder, that instruction required the jury to find: "1. The defendant committed an act that caused the death of another person. [¶] AND [¶] 2. When the defendant acted, she had a state of mind called malice aforethought. [¶] AND [¶] 3. She killed without lawful excuse justification. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if she unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. She intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time she acted, she knew her act was dangerous to human life; [¶] AND [¶] 4. She deliberately acted with conscious disregard for human life."

The jury found Mendoza not guilty of first degree murder but guilty of second degree murder and found the gun enhancement true.[4]

The trial court sentenced Mendoza to an aggregate term of 40 years to life in state prison.

Mendoza appealed and a different panel of this court affirmed the judgment. (*People v. Mendoza, supra*, C078817.)

---

**4** The jury also found Mendoza guilty of the two counts of vandalism and exhibiting a firearm, but not guilty of assault with the car.

4

In 2024, Mendoza filed a petition pursuant to section 1172.6 to have her murder conviction vacated and to be resentenced. Following the appointment of counsel and the receipt of briefing, the trial court denied the petition at the prima facie stage, stating: "I was the trial judge for Ms. Mendoza. And I can review parts of the record, including instructions, verdict forms. And, again, I think I can rely also on my own memory of this case. But Ms. Mendoza was the actual killer. She was not—the jury was not instructed on natural and probable consequences or aiding and abetting or felony murder. Her defense at trial was self-defense. She admitted shooting her significant other. There was text messages that she was very angry before. So she does not get to have an OSC because she would—again, was not prosecuted under any of the theories that would allow her to have an OSC. So the Court is going to find that Ms. Mendoza has not made a prima facie case."

Mendoza timely appealed.

DISCUSSION

Under *Delgadillo*, we must "evaluate the specific arguments presented in [the defendant's supplemental brief]," but we are not compelled to undertake an "independent review of the entire record to identify unraised issues." (*People v. Delgadillo, supra*, 14 Cal.5th at p. 232.) We proceed accordingly.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 amended section 188, subdivision (a)(3), to prohibit imputing malice based solely on an individual's participation in a crime. Senate Bill 1437 also amended section 189, subdivision (e), to provide that a defendant can be convicted under a felony-murder theory only if: (1) they were the actual killer; (2) they

were not the actual killer but, with the intent to kill, assisted the actual killer in the commission of the murder; or (3) they were a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3).)

Under section 1172.6, a defendant is eligible for resentencing for murder "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . . [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

The resentencing process begins with the filing of a petition that includes a declaration that all requirements for eligibility are met. (§ 1172.6, subd. (b)(1)(A).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708, citing *People v. Lewis* (2021) 11 Cal.5th 952, 970-972; § 1172.6, subd. (c).) If the petitioner makes a prima facie case, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d).)

At the prima facie stage, our Supreme Court has emphasized that "the prima facie inquiry . . . is limited," and "the 'prima facie bar was intentionally . . . set very low.' " (*People v. Lewis, supra*, 11 Cal.5th at pp. 971, 972.) In considering whether the petitioner has made a prima facie showing, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner

6

would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Id.* at p. 971.)  At this stage, the court does not "inquir[e] into the truth of those allegations and the credibility of the evidence on which they may rely." (*People v. Davenport* (2021) 71 Cal.App.5th 476, 483, disapproved on another ground in *People v. Patton* (2025) 17 Cal.5th 549, 569, fn. 12.)  The court may also consider the record of conviction, which "will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971.)  The record of conviction includes the jury instructions and the jury's verdict.  (See *People v. Harden* (2022) 81 Cal.App.5th 45, 52.)  The court may deny the petition at the prima facie stage if the record of conviction otherwise shows the conviction was based on a theory of liability that remains valid under Senate Bill 1437.  (*People v. Allen* (2023) 97 Cal.App.5th 389, 395.)

Here, as permitted, the trial court reviewed the record of conviction at the prima facie stage to determine whether Mendoza was ineligible for relief as a matter of law. (*People v. Lewis, supra*, 11 Cal.5th at pp. 971-972.)  Indeed, the trial court expressly stated it could review the jury instructions and jury verdict.  Those instructions and the jury's verdicts are included in the record we have incorporated by reference into this case at Mendoza's request.

Those jury instructions and verdict forms demonstrate Mendoza is not eligible for resentencing as a matter of law.  The trial court did not give a natural and probable consequence instruction or the felony-murder instruction.[5]  Instead, the jury instructions

_____

[5]     We acknowledge that CALCRIM No. 520 defines implied malice, in part, in terms of an act, the natural consequences of which are dangerous to life.  "The argument that the 'natural and probable consequences' language in the definition of implied malice means that the jury could have convicted [Mendoza] of murder under the natural and

7

required the jury to find Mendoza personally harbored express or implied malice to convict her of murder.  (See CALCRIM No. 520.)  Because the jury found Mendoza guilty of second degree murder, we agree with the trial court that in light of these instructions the jury necessarily found Mendoza guilty of murder under a valid theory. (*People v. Allen, supra*, 97 Cal.App.5th at p. 395; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

To the extent the trial court may have also relied on its independent memory of the case, we find no error as we review the result, not the trial court's reasoning.  (*Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 779-780, fn. 6 [if a trial court's decision is correct on any theory of law applicable to the case, the appellate court will affirm the judgment, whether the trial court's reasons were correct or not].)  Here, Mendoza is not eligible for resentencing because the jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule.  She was convicted as the actual killer and not on an imputed malice theory.

In her supplemental brief, Mendoza raises the contention her counsel failed to introduce evidence of battered wife's syndrome at her original trial.  We decline to consider this alleged error because section 1172.6 "does not permit a petitioner to

---

probable consequences doctrine has been repeatedly rejected.  (See, e.g., *People v. Soto* [2020] 51 Cal.App.5th [1043,] 1059 ['The "natural consequences" language in the instruction for second degree murder does not transform Soto's conviction into one for murder under the natural and probable consequences doctrine within the meaning of section [1172.6]']; *People v. Carr* (2023) 90 Cal.App.5th 136, 144 [' "[T]he use of the term 'natural consequences' in the . . . definition of implied malice does not import into the crime of murder the case law relating to the distinct 'natural and probable consequences' doctrine developed in the context of aiding and abetting liability" '].)" (*People v. Hill* (2025) 109 Cal.App.5th 274, 291, fn. 8, petn. for review pending, petn, filed Apr. 8, 2025, S290189, time for grant or denial of review extend to July 7, 2025.)

establish eligibility on the basis of alleged trial error." (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

DISPOSITION

The trial court's order denying Mendoza's petition for resentencing under section 1172.6 is affirmed.

_____/s/_____
EARL, P. J.

We concur:


_____/s/_____
HULL, J.


_____/s/_____
KRAUSE, J.